**Kimberly MINER, Appellant–Plaintiff,**

v.

**SOUTHWEST SCHOOL CORPORATION, and Jerry L. Miller, Individually, and as Superintendent of Southwest School Corporation, Appellees–Defendants.**

**No. 84A01–0105–CV–163.**

Court of Appeals of Indiana.

Sept. 20, 2001.

Sandy Leviticus Bryant, Indianapolis, IN, Attorney for Appellant.

Shannon L. Robinson, Kelley, Belcher & Brown, Bloomington, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

Appellant-plaintiff Kimberly Miner appeals the trial court's partial summary judgment entered in favor of appellees-defendants Southwest School Corporation and Jerry L. Miller. Specifically, she claims that she may sue Miller in his individual capacity because he acted wantonly and willfully and was acting within the scope of his employment—as Superintendent of Schools for the Southwest School Corporation—when he caused a motor-vehicle accident. Miner also maintains that she may bring a punitive damage claim against Miller and that the trial court improperly denied her motion for partial summary judgment on the issue of Miller's scope of employment.

### FACTS

The facts most favorable to Miner are that on February 16, 1999, Miller worked as Superintendent of Schools for the Southwest School Corporation. At approximately 4:15 p.m. that day, Miller left the school and drove home. While at home Miller "had something to eat" and then left for West Terre Haute, thirty miles away, to watch a girls high school basketball game. Appellant's App. at 36. The game ended sometime after 8:00 p.m., whereupon Miller began his return trip home. En route to his home, Miller stopped at "Wendy's" and "grabbed a bite to eat." Appellant's App. at 37.

After leaving Wendy's, Miller drove south on U.S. 41 and eventually approached the intersection at Carlisle Road. According to Miller, he noticed that the stoplight at Carlisle Road had turned yellow before he entered the intersection. Having traveled through the intersection before, Miller believed that he could clear the intersection while the light was still yellow. Traveling between 50 and 60 miles per hour, Miller struck Miner's car broadside, which was turning west onto Carlisle Road from U.S. 41's northbound turning lane. The accident killed the passenger in Miner's car and seriously injured Miner. An accident reconstruction expert opined that, had Miller braked when the light turned yellow, Miller would have stopped eight feet before the point of impact with Miner's car.

At the time of the accident, Miller was driving a car that Southwest School Corporation provided him for both "business and personal use." Appellant's App. at 45. The Southwest School Corporation provided the car along with other standard employment perks in accordance with Miller's employment contract. The contract, however, does not specify what duties the Superintendent of Schools must carry out. Answering a deposition question concerning the extent of his duties, Miller responded that, as "the only central office administrator[,] I've got everything. I've got transportation, I've got maintenance, I've got food service, I've got budget, I've got just all the duties that are the responsibility of a superintendent of schools." Appellant's App. at 31.

On May 25, 1999, Miner filed a three-count complaint against Southwest School Corporation, Miller individually, and Miller as Superintendent of Southwest School Corporation. The first count alleged that Miller acted wantonly and willfully in causing the accident. In the second count, Miner requested punitive damages, claiming that Miller "was aware of the risk to others and disregarded that risk." Appellant's App. at 14. In the third and final count, she posited that Miller, whom Southwest School Corporation employed as Superintendent of Schools, "may have been working in that capacity at the time" of the accident. Appellant's App. at 15.

Miner pled in Count III, "if Jerry L. Miller was working in his capacity as an employee of Southwest School Corporation then said corporation would be responsible for the damages and injuries caused by" Miller. Appellant's App. at 15.

Southwest School Corporation and Miller subsequently filed a motion for partial summary judgment. They asserted that, according to the Indiana Tort Claims Act, Miner was not entitled to punitive damages. They also argued that Miller was acting within the scope of his employment at the time of the accident and was, therefore, immune to liability in his individual capacity. In response, Miner filed: 1) a motion in opposition to Miller and Southwest School Corporation's summary judgment motion, and 2) her own motion for partial summary judgment. The trial court ultimately granted partial summary judgment in favor of Southwest School Corporation and Miller on Miner's claims that he acted willfully and wantonly and that he acted outside the scope of his employment. The trial court also granted summary judgment in favor of Southwest School Corporation and Miller on the issue of punitive damages. Miner now appeals.

### DISCUSSION AND DECISION

#### I. Standard of Review

A summary judgment may be rendered on less than all the issues or claims. Ind.Trial Rule 56(C). A grant of summary judgment requires that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Id.* On appeal from summary judgment, the reviewing court faces the same issues that were before the trial court and analyzes them in the same way. *Carie v. PSI Energy, Inc.*, 715 N.E.2d 853, 855 (Ind.1999). We view the pleadings, depositions, answers to interrogatories, and affidavits in the light most favorable to the nonmoving party. *Id.* Although the nonmovant has the burden of demonstrating the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that the nonmovant was not improperly denied his day in court. *Id.*

#### II. Miner's Claims

##### A. Willful and Wanton Misconduct

Miner claims there was a genuine issue of material fact regarding whether Miller acted in a willful and wanton manner in causing the auto accident. Our supreme court has described willful and wanton misconduct in terms of acts of commission and omission. According to our supreme court, a willful and wanton act of commission is: "an intentional act done with the reckless disregard of the natural and probable consequence of injury to a *known person under the circumstances known to the actor* at the time." *Witham v. Norfolk & W. Ry. Co.*, 561 N.E.2d 484, 486 (Ind.1990) (emphasis supplied). Correspondingly, a willful and wanton omission is described as: "[a] failure to act when the actor has actual knowledge of the natural and probable consequence of injury and his opportunity to avoid the risk." *Id.* Whether the party has acted or failed to act, willful and wanton misconduct has "two elements: 1) the defendant must have knowledge of an impending danger or consciousness of a course of misconduct calculated to result in probable injury; and 2) the actor's conduct must have exhibited an indifference to the consequences of his own conduct." *Id.*

To flesh out the abstractions above, we turn to an illustrative case addressing whether a driver's acts—when he failed to stop at an intersection and caused an automobile accident—amounted to willful and wanton misconduct. In *Becker v. Strater*, as the driver approached an intersection

with which he was familiar, he slowed down to observe and call his passenger's attention to some cattle in a field south of the road. 117 Ind.App. 504, 506, 72 N.E.2d 580, 581 (1947) (addressing a personal injury claim brought under Indiana's Guest Statute), *quoted in and cited with approval by Reynolds v. Langford,* 241 Ind. 431, 437–38, 172 N.E.2d 867, 870 (1961). As the driver neared the intersection, he slowed to 15 to 20 miles per hour but did not stop or look to his right. Upon reaching the intersection and without stopping, the driver accelerated and was struck by an automobile approaching the intersection from the north.

Having defined willful and wanton misconduct in terms that turned out to be substantially similar to our supreme court's definition in *Witham,* the *Becker* court upheld the trial court's directed verdict in favor of the driver:

> There was nothing about [the driver]'s conduct suggesting reckless abandon. He did not rush into the intersection knowing that other cars were approaching. All the evidence is to the effect that he had no knowledge of the approach of the automobile which struck him. He was not warned either by others or by his own senses.

> Applying the definition of willful or wanton misconduct above set forth, we think it cannot be said that, with knowledge of existing conditions, [the driver] persisted with reckless indifference to consequences in a course which he knew would probably result in injury to his guest.

*Id.* at 508, 72 N.E.2d at 581.

■ Here, the trial court's grant of summary judgment on this issue is supported by: 1) the definition of willful and wanton, 2) the elements of that mental state, and 3) illustrative caselaw. First, in describing willful and wanton misconduct,

a party must intentionally act with "the reckless disregard of the natural and probable consequence of injury to a *known person under the circumstances known to the actor* at the time." *Witham,* 561 N.E.2d at 486 (emphasis supplied). Miner presented no evidence that Miller knew her car was approaching the intersection and would probably turn into his path. Rather, it is undisputed that Miller approached the intersection believing he could clear it without causing injury to himself or another automobile. Appellant's App. at 39. Second, Miner presented no evidence that Miller had "knowledge of impending danger or consciousness of a course of misconduct calculated to result in probable injury." *Witham,* 561 N.E.2d at 486. Again, it is undisputed that Miller did not see any other vehicles as he approached the intersection. Appellant's App. at 42. Finally, just as the driver in *Becker,* there was nothing in Miller's conduct suggesting "reckless abandon" when he decided to accelerate through the intersection and failed to look out for other vehicles. *See Becker,* 117 Ind.App. at 508, 72 N.E.2d at 581. In conclusion, Miner failed to present evidence creating a genuine issue of material fact on this issue. The question of whether Miller's conduct constituted negligence remains for the factfinder.

### B. The Scope of Miller's Employment

■ Miner contends that she raised a genuine issue of material fact regarding whether Miller was acting within the scope of his employment as Superintendent of Schools when he caused the accident. Therefore, she concludes, the trial court erred in granting Southwest School Corporation and Miller partial summary judgment on this issue.

We note that Miner failed to properly raise this issue in her complaint. In gen-

eral, a plaintiff may not maintain an action against a governmental employee personally if that employee was acting within the scope of his employment. IND.CODE § 34–13–3–5(a). Rather, to bring suit against the employee personally, the plaintiff "must allege that an act or omission of the employee that causes a loss is:"

 (1) criminal;

 (2) clearly outside the scope of the employee's employment;

 (3) malicious;

 (4) willful and wanton; or

 (5) calculated to benefit the employee personally.

I.C. § 34–13–3–5(b). The plaintiff must also include in the complaint "a reasonable factual basis supporting the allegations." *Id.* Therefore, to bring a claim against Miller individually for acting "clearly outside the scope of [his] employment," Miner was required to make that specific allegation in her complaint and then supply facts supporting that allegation in her complaint. *See* I.C. § 34–13–3–5(b).

Miner neglected to do either. Instead, Miner pursued an individual claim against Miller on the basis that he had acted willfully and wantonly. She makes that specific allegation—with accompanying factual support—in the first count of her complaint eight separate times. Appellant's App. at 13. But the allegation that Miller acted clearly outside the scope of his employment does not appear in the complaint. Nor is any factual basis supporting that allegation to be found in the complaint. In fact, in Count III Miner concedes that Miller was a school superintendent and "may have been working in that capacity at the time" of the accident. Appellant's App. at 15. Moreover, Miner eventually makes plain that she "did not claim in her complaint that Mr. Miller was actually acting within the scope of his employment at the time of the accident. Her complaint

against Mr. Miller, individually, was based on the alternative statutory ground of willful and wanton misconduct." Appellant's reply brief at 2.

Miner filed her complaint on May 25, 1999. Her claim that Miller was acting clearly outside the scope of his employment does not surface until her memorandum in opposition to Miller and the School Corporation's motion for summary judgment. She filed this memorandum on February 15, 2000. Miner later asserts, in a separate motion for summary judgment filed on November 14, 2000, that she was unaware that Miller was acting outside the scope of his employment when she filed her complaint. Appellant's App. at 89.

However, when Miner became convinced that Miller had acted clearly outside the scope of his employment duties—and had facts to support her allegation—she failed to request amendment of her complaint. Our trial rules allow a party to amend his complaint, after a responsive pleading has been filed, by permission of the trial court when justice so requires. Ind.Trial Rule 15(A). Our supreme court has recommended that courts liberally allow amendments to pleadings unless the amendment would result in prejudice to the opposing party. *Huff v. Travelers Indem. Co.,* 266 Ind. 414, 420, 363 N.E.2d 985, 989 (1977).

Our rules of procedure regarding amended pleadings complement I.C. § 34–13–3–5(b). Under I.C. § 34–13–3–5(b), the plaintiff must specifically allege in the complaint that the employee was acting clearly outside the scope of the employee's employment and provide a reasonable factual basis to support the allegation. The statute does not prohibit an amendment to the complaint if facts unavailable to the plaintiff when the complaint was filed are later revealed. Thus, without an amendment to the complaint adding the specific

allegation regarding scope of employment and a reasonable factual basis to support that allegation, I.C. § 34–13–3–5(b) bars Miner's claim.

### C. Mooted Issues

[6] Miner maintains that the trial court erred in granting Miller and Southwest School Corporation summary judgment on her punitive damages claim. We have resolved that Miner may not maintain individual claims against Miller. Therefore, the only surviving claims she has, arising out of this incident, are against Southwest School Corporation. Under the Indiana Tort Claims Act, a governmental entity is not liable for punitive damages. IND.CODE § 34–13–3–4. Because Southwest School Corporation is a governmental entity and because she has no claims against Miller in his individual capacity, Miner may not seek punitive damages in this action. Therefore, any allegation of error on this basis is moot.

Miner also contends that the trial court erred in failing to grant her partial summary judgment on the issue of Miller's scope of employment. We have determined that Miner did not raise this claim in accord with our trial rules and applicable statutory law. Therefore any allegation of error on this issue is moot.

### CONCLUSION

In sum, the trial court properly granted Miller and Southwest School Corporation summary judgment on Miner's claims against Miller personally. Miner failed to present evidence that Miller acted willfully and wantonly in causing the accident. Furthermore, because of Miner's failure to properly raise the issue of Miller's scope of employment in her complaint, the trial court correctly granted summary judgment on that issue. Finally, Miner's other contentions—that the trial court improperly granted summary judgment on the issue

of punitive damages and improperly denied her motion for partial summary judgment on Miller's scope of employment—are moot.

Judgment affirmed and cause remanded for proceedings against Southwest School Corporation.

FRIEDLANDER, J., and ROBB, J., concur.