James H. **HIGGASON, Jr.,**
**Appellant–Plaintiff,**

v.

**STATE of Indiana, Appellee–Defendant.**

**No. 77A05–0208–CV–362.**

Court of Appeals of Indiana.

May 22, 2003.

---

James H. Higgason, Jr., Carlisle, IN, Appellant Pro Se.

Steve Carter, Attorney General of Indiana, Frances Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATTINGLY–MAY, Judge.

James H. Higgason appeals the trial court's dismissal with prejudice of his complaint against Ron McCullough, F. Brannick, and Vera Barnett (collectively, "Defendants"). Higgason raises four issues, which we consolidate and restate as:

1. Whether the trial court erred by considering a motion to dismiss that was filed by a deputy attorney general who had not entered an appearance on behalf of Defendants;

2. Whether the trial court erred by granting Defendants' motion to dismiss because Higgason was not given time to respond to the motion; and

3. Whether the trial court erred by granting Defendants' motion to dismiss because Higgason's complaint did not meet the requirements of Ind.Code § 34–13–3–5.[1]

We affirm.

## FACTS AND PROCEDURAL HISTORY[2]

■ Higgason is an inmate housed in the Secured Housing Unit ("SHU") at the

---

1. Ind.Code § 34–13–3–5 provides, in pertinent part:

 (b) ... A lawsuit alleging that an employee acted within the scope of the employee's employment must be exclusive to the complaint and bars an action by the claimant against the employee personally. However, if the governmental entity answers that the employee acted outside the scope of the employee's employment, the plaintiff may amend the complaint and sue the employee personally. An amendment to the complaint by the plaintiff under this subsection must be filed not later than one hundred eighty (180) days from the date the answer was filed and may be filed notwithstanding the fact that the statute of limitations has run.
 (c) A lawsuit against [a government] employee personally must allege that an act or omission of the employee that causes a loss is: (1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wanton; or (5) calculated to benefit the employee personally. The complaint must contain a reasonable factual basis supporting the allegations.

2. Because Higgason appeals the grant of Defendants' motion to dismiss, we presume the

Wabash Valley Correctional Facility ("WVCF"). Defendants are employees of WVCF. Barnett's rank is Captain, McCullough's rank is Sergeant, and Brannick's rank is Officer. Higgason's complaint does not explain what each Defendant's job is at the WVCF; however, in his appellate brief, Higgason claims McCullough is "routinely assigned to work as a floor officer in charge of security." (Appellant's Br. at 9.)

Barnett adopted a SHU policy prohibiting inmates in certain portions of the SHU from possessing large plastic bottles because the bottles could be used to squirt liquids on passing security officers. The impact of the policy was that prisoners in the affected areas were prohibited from keeping any sixteen-ounce bottles of hygiene products (i.e., shampoo, conditioner, etc.) even though those items were sold at the prison commissary. Accordingly, correctional officers would confiscate such items from inmates.

Subsequently, Barnett implemented another SHU policy requiring that either the Indiana Department of Correction ("IDOC") or the prisoner dispose of any confiscated items, rather than the IDOC holding the items to return to the inmate later. Pursuant to this policy, McCullough "took it upon himself to dispose of Higgason's personal property" even though he was not the property officer routinely assigned to complete that task. (Appellant's App. at 25.)

At some point, McCullough put Higgason on "strip cell status." Brannick was the officer responsible for documenting the items that belonged to Higgason. Brannick "falsely" reported the number of items Higgason had. (*Id.* at 26.) For example, Brannick reported Higgason's cell contained five boxes of legal work

when it contained six and failed to report a number of other items.

On August 17, 2001, Higgason filed a complaint against Defendants. In that complaint, Higgason claimed the policy prohibiting large plastic bottles was "arbitrarily implemented" because every day the prisoners received milk in plastic bags that could be used to squirt liquids, including soured milk, greater distances than could the plastic bottles. (*Id.* at 19.) Consequently, Higgason argued, the policy was merely a justification for Defendants to "deprive (steal) hygienic items" from inmates. (*Id.* at 22.) Higgason also claimed that when McCullough disposed of his property, McCullough "overextended the power and authority vested on him" because he was not the property officer routinely assigned to do this task and because he acted without providing Higgason the due process protection required by IDOC policy 02–01–101. (*Id.* at 25.) In addition, Higgason alleged that McCullough " 'unjustly' had Higgason put on strip cell status ... as a means to gain access to personal property and legal work, so that he could covertly dispose of a civil rights complaint" against McCullough and "steal" Higgason's personal property to retaliate for Higgason suing McCullough's wife. (*Id.* at 22.) In summary, Higgason claimed that "with the approval of, and/or authorization from, Captain Vera Barnett, Sgt. Ron McCullough and Officer F. Brannick confiscated and disposed of" $87.42 worth of Higgason's personal property. (*Id.* at 27.)

On May 16, 2002, Defendants filed a motion to dismiss Higgason's complaint. They alleged dismissal under Trial Rule 12(B)(6) was proper because Higgason's

facts stated in Higgason's complaint are true. *See Ogden v. Premier Properties, USA, Inc.,* 755

N.E.2d 661, 665 (Ind.Ct.App.2001).

complaint failed to meet the requirements of Ind.Code § 34–13–3–5.[3] On May 29, 2002, the trial court granted Defendants' motion to dismiss. On June 12, 2002, Higgason filed a "Motion for Relief from Judgment and/or Motion to Correct Errors." (*Id.* at 15–18.) On June 14, 2002, the trial court denied Higgason's motion. Higgason appeals.

## DISCUSSION AND DECISION

### 1. *Deputy Attorney General Appearance*

■ On November 28, 2001, at a video conference, Deputy Attorney General Ed Miller orally entered his appearance on behalf of Defendants. Then, on May 29, 2002, Deputy Attorney General Kimberly Wilkins filed the motion to dismiss on behalf of Defendants. Prior to that date, Wilkins had not filed an appearance form with the trial court. Higgason claims that Indiana Trial Rule 3.1 required Wilkins to file an appearance and that the trial court should have ignored the motion to dismiss filed by Wilkins until she filed an appearance.

■ Because construction of the trial rules is a question of law, we review this issue *de novo. See, e.g., Keene v. Elkhart County Park and Recreation Bd.,* 740 N.E.2d 893, 896 (Ind.Ct.App.2000) ("Thus, since the construction of the terms of a written instrument, and the determination of whether summary judgment is appropriate when material facts are not in dispute, are both pure questions of law for a court, our standard of review is de novo."), *reh'g denied.*

Indiana Trial Rule 3.1, dealing with appearances by the parties to an action, provides, in pertinent part:

(B) Responding Parties. At the time the responding party or parties first appears in a case, such party or parties shall file an appearance form setting forth the following information:

(1) Name of the party or parties responding;

(2) Name, address, attorney number, telephone number, FAX number, and computer address of the attorney representing the responding party or parties, as applicable;

(3) The case number previously assigned to the proceeding;

(4) A statement that the responding party or parties will or will not accept service by FAX;

(5) Such additional matters specified by state or local rule required to maintain the information management system employed by the court; and

(6) Except in Protective Order proceedings, the name and address of a pro se responding party.

In addition, Indiana Trial Rule 3.1(E) requires parties to "promptly advise the clerk of the court of any change in the information previously supplied to the court."

The State argues that "[b]ecause the Attorney General and the Office of Attorney General had already appeared on behalf of the Defendants, it was not necessary for Wilkins to enter an additional appearance." (Appellee's Br. at 9.) We agree.

The Indiana Code permits the attorney general to "have such deputies, assistants, clerks, and stenographers as he may deem necessary to promptly and efficiently perform the duties of his office." Ind.Code

---

**3.** In the motion, Defendants cited I.C. 34–14–3–5(b); however they provided the text of I.C. 34–13–3–5(c).

§ 4–6–1–4. Accordingly, Ind.Code § 4–6–5–1 provides:

> The attorney-general of the state of Indiana shall have the sole right and power to appoint all necessary deputy attorneys-general, and to assign any deputy so appointed to any agency of the state of Indiana to perform in behalf of such agency and the state any and all of the rights, powers or duties now or hereafter conferred by law or laws upon the attorney-general or done by any attorney, counsellor, or deputy attorney-general for such agency.

Even after a deputy is assigned to work in an agency, the "deputy shall be under the direction and control of the attorney-general." Ind.Code § 4–6–5–2. Consequently, regardless of whether the Attorney General was being assisted by Miller or Wilkins, the Attorney General represented Defendants at all pertinent times. Under these circumstances, the trial court did not err when it considered the motion to dismiss filed by Wilkins on behalf of the Attorney General.[4]

### 2. *Dismissal before Response*

■ Higgason claims that the trial court erred when it granted Defendants' motion to dismiss thirteen days after it was filed because, pursuant to Ind. Trial Rule 6(C) and Ind. Trial Rule 12, Higgason had twenty days to respond to Defendants' motion. Higgason misreads the trial rules.

Defendants filed their motion to dismiss under Trial Rule 12(B)(6), which allows a party to raise by motion the following defense: "Failure to state a claim upon which relief can be granted, which shall include failure to name the real party in interest under Rule 17." Trial Rule 12(A) provides: "The time allowed for the presentation of defenses and objections in a motion or responsive pleading shall be computed pursuant to the provisions of Rule 6(C)." Trial Rule 6(C) states:

> A responsive pleading required under these rules, shall be served within twenty [20] days after service of the prior pleading. Unless the court specifies otherwise, a reply shall be served within twenty [20] days after entry of an order requiring it. The service of a motion permitted under Rule 12 alters the time for service of responsive pleadings as follows, unless a different time is fixed by the court:
>
> (1) if the court does not grant the motion, the responsive pleading shall be served in ten [10] days after notice of the court's action;
>
> (2) if the court grants the motion and the corrective action is allowed to be taken, it shall be taken within ten [10] days, and the responsive pleading shall be served within ten [10] days thereafter.

Trial Rule 6(C) requires a party to file a "required" responsive pleading within twenty days of the prior pleading. In addition, that rule informs parties how long after the trial court acts on a Trial Rule 12 motion a party has to file an answer. However, contrary to Higgason's claim, nothing in the language of those rules gave him twenty days to respond to Defendants' motion.

As our supreme court has said:

---

4. Nevertheless, when a change occurs in the deputy attorney general assigned to a case, the new deputy should file an appearance form, either with the trial court pursuant to Trial Rule 3.1(E) or with this court or the supreme court pursuant to Ind. Appellate Rule 16(E), as the failure to do so may result in a deputy not receiving case filings in a timely manner or may cause opposing counsel to have difficulty contacting the appropriate deputy.

There is no requirement in [Trial Rule 12] requiring the court to conduct a hearing or oral argument upon, or to receive a response to a motion to dismiss when the motion is addressed to the face of the complaint and not supported by matters outside the pleadings. Where as here, material has not been submitted in support of the motion, the motion should be granted if it is clear from the face of the complaint that under no circumstances could relief be granted. Appellant has presented no authority supporting the proposition that a party should have access to the court before the ruling upon an opponent's motion to dismiss like the one here, and for the lack of same he must bear the risk. The ruling upon the motion to dismiss was not erroneous on this ground.

*Cobb v. Owens,* 492 N.E.2d 19, 20 (Ind. 1986) (internal citations omitted). Because the trial court did not have to wait for a response from Higgason, the trial court did not err when it ruled on Defendants' motion thirteen days after it was filed. *See id.*

3. *Dismissal for Failure to Meet Ind. Code § 34–13–3–5*

■ Finally, Higgason claims that the trial court erred when it granted Defendants' motion to dismiss under Trial Rule 12(B)(6). A Trial Rule 12(B)(6) motion tests the legal sufficiency of a complaint, not the facts underlying the complaint. *Baker v. Town of Middlebury,* 753 N.E.2d 67, 70 (Ind.Ct.App.2001), *reh'g denied, trans. denied,* 774 N.E.2d 513. "Therefore, we view the complaint in the light most favorable to the non-moving party, drawing every reasonable inference in favor of this party," without looking at any evidence that may be in the record. *Id.* During our review, we stand in the shoes of the trial court and determine whether the trial court misapplied the law. *Id.* The trial court properly grants the motion to dismiss if "it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances." *Id.* We sustain the trial court's ruling if we can affirm on any basis found in the record. *City of New Haven v. Reichhart,* 748 N.E.2d 374, 378 (Ind.2001).

Higgason's tort complaint named three government employees as defendants. Defendants' motion to dismiss alleged that the trial court did not have personal jurisdiction over Defendants due to Higgason's failure to meet the requirements of Ind. Code § 34–13–3–5. Based upon that allegation, the trial court dismissed Higgason's complaint.

■ Ind.Code chapter 34–13–3 controls tort claims against governmental entities and employees. A plaintiff may not maintain an action against a governmental employee personally if that employee was acting within the scope of his or her employment. Ind.Code § 34–13–3–5(b). Rather, to bring a suit against an employee personally, the plaintiff must "allege that an act or omission of the employee that causes a loss is: (1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious;[5] (4) willful and wanton;[6] or (5) calculated to benefit

5. A malicious act is "[a]n intentional, wrongful act performed against another without legal justification or excuse." Black's Law Dictionary 969 (7th ed.1999).

6. Willful and wanton misconduct is either:
 1) an intentional act done with reckless disregard of the natural and probable consequence of injury to a known person under the circumstances known to the actor at the time; or 2) an omission or failure to act when the actor has actual knowledge of the natural and probable consequence of injury and his opportunity to avoid the risk.
 *Witham v. Norfolk and Western Ry. Co.,* 561 N.E.2d 484, 486 (Ind.1990), *reh'g denied.*

the employee personally." I.C. § 34–13–3–5(c). In addition, the plaintiff's complaint "must contain a reasonable factual basis supporting the allegations." *Id.*

 The purpose for granting immunity to governmental employees is to "ensure that public employees can exercise their independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment." *Celebration Fireworks, Inc. v. Smith,* 727 N.E.2d 450, 452 (Ind.2000). "To be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized." *Id.* at 453 (citing Restatement (Second) Agency § 229 (1958)).

In addition, our supreme court has further explained:

> In Indiana, an employee's tortious act may fall within the scope of his employment "if his purpose was, to an appreciable extent, to further his employer's business." Even the commission of an intentional criminal act may be considered as being within the scope of employment if "the criminal acts originated in activities so closely associated with the employment relationship as to fall within its scope." The question of whether the tortious acts of an employee are within the scope of his employment is usually a question of fact, but may be determined as a matter of law. However, the question of whether the governmental employee was acting within the scope of his employment at the time of the incident (not the degree of culpability) remains the central focus of the inquiry. Even willful or wanton behavior

does not necessarily remove one from the scope of his employment.

*Kemezy v. Peters,* 622 N.E.2d 1296, 1298 (Ind.1993) (internal citations omitted).

 If authorized and unauthorized acts are sufficiently associated, the unauthorized acts can be within the scope of employment. *Konkle v. Henson,* 672 N.E.2d 450, 457 (Ind.Ct.App.1996). However, if some of an employee's acts were authorized, while other acts were not, the jury should determine whether the unauthorized acts were within the scope of employment. *Id.*

Here, Higgason's complaint alleged that seventeen items were taken from him. Different circumstances surround Higgason's loss of different sets of items; therefore, we will discuss separately the validity of the trial court's dismissal with regard to each of these sets of items.

### A. *Plastic bottles*

 First, Higgason claims, on October 14, 1999, Brannick confiscated two bottles of shampoo and one bottle of conditioner from Higgason's cell pursuant to Barnett's policy that prisoners in Higgason's cell block could not have sixteen ounce plastic bottles. According to the complaint, McCullough disposed of these three items pursuant to another WVCF policy adopted by Barnett, which required either the IDOC or the prisoner to dispose of any confiscated materials because they would not be held for the prisoner to retrieve at a later date.

Taking the facts in the complaint as true, Higgason has not provided a "reasonable factual basis" to support his claim that Defendants were "stealing" these

Such misconduct has two elements: "1) the defendant must have knowledge of an impending danger or consciousness of a course of misconduct calculated to result in probable injury; and 2) the actor's conduct must have exhibited an indifference to the consequences of his conduct." *Id.*

items from him. *See* Ind.Code § 34–13–3–5(c) ("The complaint must contain a reasonable factual basis supporting the allegations."). Rather, Higgason alleges that Brannick and McCullough were acting pursuant to WVCF policies.[7] As for Barnett, Higgason has not claimed that she did not have authority to adopt the policies she adopted.[8] The trial court did not err when it dismissed Higgason's claim as to this property. *See, e.g., Miner v. Southwest School Corp.*, 755 N.E.2d 1110, 1115 (Ind.Ct.App.2001) (holding summary judgment appropriately granted to government employee individually when complaint did not provide facts to support an allegation that employee acted "clearly outside the scope of the employee's employment").

### B. *"Altered" property*

Next, Higgason claims that Brannick confiscated one pair of Koss Mac 5 Headphones and one set of mono ear plugs because they were "altered" property. Again, according to the complaint, McCullough disposed of these two items pursuant to Barnett's policy that confiscated items would not be kept.

As with the last set of items, Higgason alleged that Brannick and McCullough acted pursuant to WVCF policies. Accordingly, Higgason has not provided factual support for a claim that they were stealing those items. Because Higgason has failed to support such a claim with facts, he cannot sue them personally for these actions. *See, e.g., id.* The trial court did not err when it dismissed Higgason's complaint as to these items.

### C. *"Inadvertently misplaced" items*

The next set of items consists of an ankle brace, an acrylic mirror, a soap dish, a bar of soap, and a washcloth. According to Higgason, Brannick took these items from him on October 14, 1999 when he was placed on "strip cell status" and did not return these items to him when he was removed from "strip cell status" on October 18, 1999. The complaint further claims that Brannick placed these items in the laundry cart with Higgason's State-issued clothing and linens, rather than placing the items with the things that would be returned to Higgason at a later date.

Taking Higgason's allegations as true, Brannick misplaced Higgason's property when converting Higgason's cell to strip cell status. These are not facts that support an allegation that Brannick was "stealing" Higgason's property. Moreover, as converting Higgason's cell to strip cell status appears to be a task within the scope of Brannick's employment, Higgason could not properly sue Brannick in his personal capacity for these actions. Ind. Code § 34–13–3–5(b). The trial court did not err when it dismissed Higgason's complaint against Brannick as to these items.

Regarding these items, Higgason also claims that McCullough " 'unjustly' had Higgason put on strip cell status . . . as a means to gain access to Higgason's personal property and legal work . . . to overtly confiscate (steal) Higgason's personal property and hygiene as a means of

---

7. Higgason asserts that McCullough "overextended the power and authority vested on him when he disposed of Higgason's personal property" because McCullough was not "assigned to work in the inmate property storage facility." (Appellant's App. at 25.) We decline Higgason's invitation to construe "scope of employment" so narrowly as to hold that a correctional officer acts outside the scope of

his employment when he does work technically assigned to another correctional officer who is on vacation.

8. If Higgason believes the policies are improper, a suit against these employees personally is not the appropriate method by which to assert that claim.

harassment, and in retaliation for suing his wife." (Appellant's App. at 22.) However, Higgason has not provided a reasonable factual basis to support this allegation. McCullough's act of placing Higgason on strip cell status appears "to an appreciable extent, to further his employer's business" because it is an act that maintains order and discipline in the correctional facility. *Kemezy,* 622 N.E.2d at 1298. Consequently, as a matter of law, Higgason cannot sue McCullough in his personal capacity for this act that was within the scope of his employment. *See* Ind.Code § 34–13–3–5(b).

### D. *Property taken but not properly logged*

The final set of items consists of a tube of Chapstick, two tubes of toothpaste, five greeting cards, one tube of "Magic Shave Cream," one bottle of lotion, five magazines, and one washcloth. Higgason claims that these items were taken from him when he was put on "strip cell status" on October 14, 1999 and not returned when he was removed from "strip cell status" four days later. However, Higgason has not specifically alleged what happened to these items.

As we noted above, McCullough's act of placing Higgason on strip cell status was an act that furthered the business of the correctional facility by maintaining order and discipline. Consequently, as a matter of law, McCullough could not be sued in his personal capacity for this act without Higgason providing a reasonable factual basis to support an allegation under Ind. Code § 34–13–3–5(c). *See id.* In addition, Brannick's act of logging Higgason's property was an act undertaken within the scope of Brannick's employment. As Higgason has not alleged that Brannick "stole" these particular items nor provided a reasonable factual basis to support such

an allegation, the trial court did not err when it dismissed this claim. *See Miner,* 755 N.E.2d at 1115.

In summary, while Higgason's complaint uses the words "steal," (Appellant's App. at 22) and "retaliation," (*Id.*), the facts alleged in the complaint do not suggest Defendants were acting criminally or maliciously when they adopted policies, removed prohibited items from Higgason's possession, placed Higgason on strip-cell status, erroneously logged Higgason's items, and accidentally misplaced items. Consequently, the trial court did not err when it granted Defendants' motion to dismiss.

### CONCLUSION

The trial court did not err when it considered the motion to dismiss filed by Deputy Attorney General Wilkins or when it ruled on the motion before Higgason had a chance to respond. In addition, the trial court's grant of Defendants' motion to dismiss was not erroneous. Therefore, we affirm the judgment of the trial court.

Affirmed.

BROOK, C.J., and FRIEDLANDER, J., concur.