Terry L. WILLIAMS, Appellant–
Plaintiff,

v.

CINGULAR WIRELESS,
Appellee–Defendant.

No. 82A01–0312–CV–476.

Court of Appeals of Indiana.

June 4, 2004.

John D. Clouse, Ivan A. Arnaez, Evansville, IN, Attorneys for Appellant.

Catherine L. Kyle, Ogletree Deakins Nash Smoak and Stewart, P.C., Indianapolis, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Terry Williams appeals the dismissal of her complaint against Cingular Wireless ("Cingular") in her suit for personal injuries she sustained in a car accident. We affirm.

### Issues

The dispositive issue to our review of this appeal is whether Cingular owed a duty to Williams. We also address whether Cingular is entitled to appellate fees and costs.

### Facts

On March 27, 2002, Williams was involved in an automobile accident with Kellie Meagher. At the time of the collision, Meagher was allegedly using a cellular phone furnished by Cingular.

On July 26, 2003, Williams filed an amended complaint against Meagher and Cingular.[1] With respect to Cingular, the complaint alleged:

> That at the time of this collision the defendant Meagher was utilizing a telephone furnished by Cingular Wireless. That Cingular Wireless was negligent in furnishing a cellular phone to Meagher when it knew, or should have known, that it would be used while the user operated a motor vehicle.

App. p. 6.

On September 2, 2003, Cingular filed a motion to dismiss on the grounds that the complaint failed to state a valid claim for relief pursuant to Indiana Trial Rule 12(B)(6). After conducting a hearing, the trial court granted the motion to dismiss on October 10, 2003. Thereafter, Williams filed a motion to defer rendering of judgment on October 15, 2003, to which Cingular filed a response the following week. On October 22, 2003, the trial court issued an order granting the motion to dismiss.

---

1. Meagher is not a party to this appeal. For purposes of discussion, we will assume that the use of the cellular phone contributed to the accident.

On November 10, 2003, Williams filed a motion to correct error on the grounds that the trial court committed an error of law and that a cartoon recently published in the local paper constituted "newly discovered evidence" in support of her claim.[2] The trial court denied the motion to correct error and later denied the motion to defer rendering of judgment. The trial court also denied Cingular's motion for attorney fees and costs. Williams now appeals.

### Analysis

■■■ This case comes to us upon the dismissal of Williams' cause of action for failing to state a claim for relief can be granted pursuant to Trial Rule 12(B)(6). A Trial Rule 12(B)(6) motion tests the legal sufficiency of a complaint, not the facts underlying the complaint. *Higgason v. State*, 789 N.E.2d 22, 29 (Ind.Ct.App. 2003). "Therefore, we view the complaint in the light most favorable to the non-moving party, drawing every reasonable inference in favor of this party," without looking at any evidence that may be in the record. *Baker v. Town of Middlebury*, 753 N.E.2d 67, 70 (Ind.Ct.App.2001), *trans. denied*. During our review, we stand in the shoes of the trial court and determine whether the trial court misapplied the law. *Higgason*, 789 N.E.2d at 29. The trial court properly grants the motion to dismiss if it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances. *Id.* We sustain the trial court's ruling if we can affirm on any basis found in the record. *Id.* Moreover, in making this determination, we consider only the complaint and not any other evidence in the record. *Parks v. State*, 789 N.E.2d 40, 46 (Ind.Ct. App.2003), *trans. denied.*

### I. Negligence

■■■ Williams' cause of action against Cingular sounds in negligence. In order to prevail on a claim of negligence the plaintiff must show: (1) duty owed to plaintiff by defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty. *King v. Northeast Security, Inc.*, 790 N.E.2d 474, 484 (Ind. 2003).

■■■ Before reaching the questions of breach and injury, we must consider the threshold matter of whether Cingular owed a duty to Williams. Absent a duty, there can be no breach and, therefore, no recovery in negligence. *Rawls v. Marsh Supermarket, Inc.*, 802 N.E.2d 457, 459 (Ind.Ct.App.2004). Whether a defendant owes a duty of care to a plaintiff is a question of law for the court to decide. *Northern Indiana Public Service Co. v. Sharp*, 790 N.E.2d 462, 466 (Ind.2003).

■■■ In cases in which the existence of a duty is not previously established, such as the case before us, Indiana courts analyze three factors in determining whether to impose a duty at common law: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns. *Id.* We consider each in turn.

### A. Relationship

■■■ A duty of reasonable care is "not, of course, owed to the world at large," but arises out of a relationship between the parties." *Webb v. Jarvis*, 575 N.E.2d 992, 997 (Ind.1991). Williams does not have a direct relationship with Cingu-

---

**2.** The cartoon depicted the character "Blondie" talking on her cellular phone while driv-

ing and then causing an accident.

lar. The only relationship alleged in the complaint is that Cingular furnished a cellular phone to Meagher, who was later involved in a car accident with Williams while using that phone. Williams was not a customer of Cingular and was not a party to the transaction between Cingular and Meagher. There is no contractual relationship between Cingular and Williams. Furthermore, the accident did not involve a Cingular employee or vehicle and did not occur on Cingular property. Likewise, the cellular phone itself did not malfunction and cause Williams' injury. Thus, we find no relationship between Cingular and Williams that would create a duty on the part of Cingular. *See Holt v. Quality Motor Sales, Inc.*, 776 N.E.2d 361 (Ind.Ct.App.2002) (finding insufficient relationship between a used-car dealership and the driver of a car to impose duty for negligent repairs when the driver was not the owner and had no contractual relationship with dealership), *trans. denied.*

### B. Foreseeability

■ The imposition of a duty is limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm. *Webb*, 575 N.E.2d at 997. In *Goldsberry v. Grubbs*, 672 N.E.2d 475 (Ind.Ct.App.1996), *trans. denied* (1999), we distinguished between "the foreseeability component of the duty analysis and the foreseeability component of proximate cause" as follows:

> Foreseeability in the context of proximate cause involves evaluating the particular circumstances of an incident after the incident occurs. According to the American Law Institute, foreseeability for proximate cause purposes is determined from a perspective that is "after the event and looking back from the harm to the actor's negligent conduct."

As stated in Indiana, "[a] negligent act or omission is the proximate cause of an injury if the injury is a natural and probable consequence which, in light of the circumstances, should reasonably have been foreseen or anticipated." Thus, when determining proximate cause, foreseeability is determined based on hindsight, and accounts for the circumstances that actually occurred.

> By logical deduction, the foreseeability component of the duty analysis must be something different than the foreseeability component of proximate cause. More precisely, it must be a lesser inquiry; if it was the same or a higher inquiry it would eviscerate the proximate cause element of negligence altogether. If one were required to meet the same or a higher burden of proving foreseeability with respect to duty, then it would be unnecessary to prove foreseeability a second time with respect to proximate cause. Additionally, proximate cause is normally a factual question for the jury, while duty is usually a legal question for the court. As a result, the foreseeability component of proximate cause requires an evaluation of the facts of the actual occurrence, while the foreseeability component of duty requires a more general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence.

*Id.* at 479 (citations and footnote omitted, alterations in original); *see also Holt*, 776 N.E.2d at 367.

■ Williams directs us to several states' statutory schemes that have placed limitations on drivers' use of cellular phones while driving to demonstrate that the dangers of using a cellular phone while driving are widely understood and, there-

fore, that the accident was foreseeable.[3] Indeed, similar legislation has been proposed in the Indiana General Assembly.[4] As Cingular points out, however, none of these statutes place liability with cellular phone makers and instead are directed at the drivers themselves.

The fact that states are beginning to limit the use of cellular phones while driving does not answer the question of whether it is foreseeable that the sale of a cellular phone will lead to a car accident. Although we agree that it may be foreseeable that a person who is using a cellular phone while driving might be in an accident, we do not agree with the leap in logic Williams urges us to make that it is likewise foreseeable to a legally significant extent that the sale of the phone would result in an accident. A cellular phone does not cause a driver to wreck a car. Rather, it is the driver's inattention while using the phone that may cause an accident. *See Webb*, 575 N.E.2d at 997 (declining to impose liability on a physician for prescribing steroids to a patient on the grounds that it was not reasonably foreseeable that the medication would cause patient to harm others). Drivers frequently use cellular phones without causing accidents, and, of course, cellular phones are used in all sorts of places other than in vehicles. We do not conclude that there was a high degree of foreseeability that the sale of the phone would result in an accident.

## C. Public Policy

"Duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of public policy which lead the law to say that the plaintiff is entitled to protection." *Webb*, 575 N.E.2d at 997. Various factors play into this policy consideration, including convenience of administration, capacity of the parties to bear the loss, a policy of preventing future injuries, and the moral blame attached to the wrongdoer. *Ousley v. Board of Comm'rs of Fulton County*, 734 N.E.2d 290, 294 (Ind.Ct.App.2000), *trans. denied.*

Simply because an action may have some degree of foreseeability does not make it sound public policy to impose a duty. For example, many items may be used by a person while driving, thus making the person less attentive to driving. It is foreseeable to some extent that there will be drivers who eat, apply make up, or look at a map while driving and that some of those drivers will be involved in car accidents because of the resulting distraction. However, it would be unreasonable to find it sound public policy to impose a duty on the restaurant or cosmetic manufacturer or map designer to prevent such accidents. It is the driver's responsibility to drive with due care. Similarly, Cingular cannot control what people do with the phones after they purchase them. To place a duty on Cingular to stop selling cellular phones because they might be involved in a car accident would be akin to making a car manufacturer stop selling otherwise safe cars because the car might be negligently used in such a way that it causes an accident.

**3.** Williams also cites various studies and commentary relating to the dangers of driving while using a cellular phone. Because this is a review of a Rule 12(b)(6) motion to dismiss, we will not consider evidence outside the record and limit our review to the pleadings. *See Lawson v. First Union Mortg. Co.,* 786 N.E.2d 279, 281 (Ind.Ct.App.2003) (stating that we look only to the complaint and may not resort to any other evidence in the record in reviewing a motion to dismiss).

**4.** 2004 Ind. Legis. Serv. SB 131, referred to Committee on Criminal and Civil and Public Policy.

Cellular phones are safely used in many different contexts every day. Indeed, many drivers use cellular phones safely for personal and business calls, as well as to report traffic emergencies. Encouraging drivers to report accidents, dangerous road conditions, or other similar threats to authorities on their cellular phones is in the public's interest.

Imposing a duty on Cingular and similar companies to prevent car accidents such as the one in this case would effectively require the companies to stop selling cellular phones entirely because the companies have no way of preventing customers from using the phones while driving. Doing so would place a higher burden on those companies than on other types of manufacturers or sellers of products that might be distracting to drivers. Ultimately, sound public policy dictates that the responsibility for negligent driving should fall on the driver. Legislation has already been drafted to address the issue of cellular phone use while driving and to place the responsibility on the driver to refrain from doing so. We are confident that the legislature is taking appropriate measures to protect public safety, and that is both its right and duty.

### D. Balancing of Duty Factors

The relationship between Cingular and Williams is remote. Although it is foreseeable that cellular phone use while driving may contribute to a car accident, it is not foreseeable that the sale of a phone to a customer will necessarily result in a car accident. Public policy weighs in favor of not imposing a duty on cellular phone companies for car accidents, even if cellular phones have the potential to distract drivers if misused.

Upon balancing the three factors mentioned in *Webb*, we conclude that Williams' attenuated relationship with Cingular and the foregoing public policy considerations substantially outweigh any foreseeability

of the harm at issue. Therefore, we must conclude that Cingular did not owe a duty of care to Williams. *See Holt*, 776 N.E.2d at 368. The trial court properly granted the motion to dismiss.

### II. Fees

Cingular requests an award of fees and costs in defending this appeal. Rule 66(E) of the Indiana Rules of Appellate Procedure provides in pertinent part, "[t]he Court may assess damages if an appeal ... is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorney's fees." Our discretion to award attorney fees under Appellate Rule 66(E) is limited, however, to instances when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay. *Orr v. Turco Mfg. Co.*, 512 N.E.2d 151, 152 (Ind.1987). Additionally, although Appellate Rule 66(E) provides us with discretionary authority to award damages on appeal, we must use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal. *Thacker v. Wentzel*, 797 N.E.2d 342, 346 (Ind.Ct.App.2003). Although Williams' argument did not carry the day, we decline Cingular's request.

### Conclusion

The trial court did not err by granting Cingular's motion to dismiss for failing to state a claim for which relief can be granted pursuant to Trial Rule 12(b)(6). However, Cingular has not convinced us that Williams' appeal was frivolous, so we deny its motion for appellate costs and fees. We affirm.

Affirmed.

CRONE, J., and MATHIAS, J., concur.