

FILED

Mar 13 2018, 7:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeremy A. Peelle
Peelle Law Office
Kokomo, Indiana

ATTORNEY FOR APPELLEE

Alan D. Wilson
Kokomo, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mark Blacklidge,

*Appellant-Defendant,*

v.

Kent Blacklidge,

*Appellee-Plaintiff.*

March 13, 2018

Court of Appeals Case No.
34A02-1710-PL-2509

Appeal from the Howard Superior
Court

The Honorable Richard A.
Maughmer, Special Judge

Trial Court Cause No.
34D04-1602-PL-120

**Bailey, Judge.**

## Case Summary

[1] Mark Blacklidge ("Mark") appeals the trial court's judgment against him personally, and in favor of Kent Blacklidge ("Kent"), Mark's father, for $40,623.55 in past-due appraisal fees, following a bench trial.

[2] We affirm.

# Issues

Mark raises two issues which we restate as follows:

> I.  Whether the trial court clearly erred when it disregarded the parties' formation of a limited liability company ("LLC") and found Mark personally liable to Kent under the parties' oral appraisal fee contract.

> II. Whether the trial court erred when it applied the six-year statute of limitations contained in Indiana Code Section 34-11-2-7 to the parties' oral agreements, rather than the two-year statute of limitations contained in Indiana Code Section 34-11-2-1 that is applicable to employment disputes.

# Facts and Procedural History

The facts favorable to the judgment are as follows. Kent and Mark are father and son, and both are real estate appraisers. In the year 2000, they orally agreed to start a business together. The business, based in Kokomo, was called Blacklidge Appraisals (hereinafter, "the appraisal entity"). They did not create any formal documentation of either the appraisal entity or their business relationship with each other. They did, however, have an oral contract under which they were equals in the appraisal entity and each person was entitled to seventy percent of the appraisal fees for appraisals that person performed, with the other thirty percent being used to pay overhead expenses.

In December of 2004, the appraisal entity became a limited liability company ("LLC") with Kent and Mark having 49/51 percent interests, respectively.

Although the parties filed Articles of Organization with the Indiana Secretary of State, that document is not contained in the record. And the parties took no further formal steps related to the establishment of the LLC; they did not create a written operating agreement, a management agreement, or any other written agreement between Kent, Mark, and the LLC, and they held no LLC meetings. Neither Kent nor Mark were employees of the LLC. Rather, after creation of the LLC, the parties continued to operate under the oral agreement that each individual was still entitled to seventy percent of the fees from appraisals that individual completed, after overhead expenses were paid.

[6] In 2013, the appraisal entity made an election for Subchapter S status.[1] Effective January 1, 2014, Kent voluntarily relinquished all of his interest in the appraisal entity to Mark. However, neither the Subchapter S status election nor Kent's relinquishment of interest in the appraisal entity changed the business relationship and division of appraisal income between Kent and Mark that had been created by their oral agreement.

[7] Nancy Nicholson ("Nicholson") of the McNeal Accounting Firm did the accounting for the appraisal entity beginning in 2010. She kept track of what Kent was owed based on the parties' oral agreement for the distribution of appraisal profits. According to an "Unpaid Bills Detail" report Nicholson generated on December 31, 2013, from her accounting records, Kent was owed

---

[1] Mark does not contend that the appraisal entity's Subchapter S status had any effect on the parties' oral appraisal fee agreement.

$28,607.35 in appraisal fees that had already been collected for the period from May 16, 2011 through December 31, 2013. Tr. at 69-70; Appellee's App. at 11-13. Nicholson provided a copy of that Unpaid Bills Detail report to both Kent and Mark on or around February 9, 2014. Tr. at 78-79.

[8] Nicholson terminated her business relationship with the appraisal entity at the end of 2013. After that time, Mark handled the appraisal entity's finances. Beginning in January 2014, Mark wrote all the checks and made all checkbook entries, and Kent received no accounting records regarding his appraisal fees. However, Kent kept his own detailed, separate records of all the income from the appraisals he performed from the beginning of the appraisal entity until he left it.

[9] After Nicholson left the appraisal entity—i.e., approximately January 1, 2014—Kent began receiving smaller and smaller payments for the appraisals he did. Kent terminated his business relationship with Mark on June 24, 2015.[2] On February 16, 2016, Kent filed a complaint against Mark for damages arising out of Mark's breach of the parties' oral appraisal fees agreements. On March 28, Mark filed his answer, a counterclaim for "bad faith litigation," and affirmative defenses, including the defenses that Kent's "[c]omplaint is subject, in part or in whole, to the Statute of Limitations" and "the Statute of Frauds." Appellant's

---

[2] However, Kent provided services to the appraisal entity through June 26, 2015.

App. at 13-16. Mark filed a motion for summary judgment which was subsequently denied.

[10]　The trial court held a bench trial on September 29, 2017, at which Kent, Mark, and Nicholson testified. The court entered judgment in favor of Kent, and made the following findings and judgment:

1. Kent and Mark are father and son.

2. Kent and Mark are both real estate appraisers.

3. In the year 2000, Kent and Mark orally agreed to establish an appraisal entity wherein Kent and Mark were equals.

4. Appraisal entity overhead and expenses were to be paid first before any profit would be taken by Kent or Mark.

5. The goal of the appraisal entity was to show no profit.

6. The appraisal entity became a Limited Liability Company (LLC) in 2004 with Kent and Mark having 49/51 per cent equitable interest.

7. No articles regarding the establishment of the LLC have been provided to the court.

8. Except for required filings with the Indiana Secretary of State, no LLC formalities were accomplished by Kent and/or Mark.

9. No operating agreement, formal partnership[,] or written contracts exist between Kent, Mark, and the LLC.

10. At no time did Kent become an employee of Mark or the LLC.

11. Per agreement between Kent and Mark, Kent was to receive seventy per cent of the appraisal income Kent brought into the appraisal entity.

12. The informal business relationship between Kent and Mark did not change when the appraisal entity became an [sic] LLC.

13. In 2013[,] an election was made for Subchapter S status for the appraisal entity, which election did not change the informal business relationship between Kent and Mark.

14. As of 1 January 2014, Kent had voluntarily relinquished all of his equitable interest in the appraisal entity LLC to Mark.

15. The informal business relationship between Kent and Mark was discontinued as of 24 June 2015.

16. Although Kent had no ownership interest in the appraisal entity from 1 January 2014 until 24 June 2015, Kent anticipated he would continue to receive seventy per cent of the appraisal income Kent brought into the appraisal entity.

17. Kent and Mark stipulate that Kent is owed $687.00 from the appraisal entity LLC for reimbursement of business expenses advanced by Kent.

18. This court does not speculate about the overhead expense of the appraisal entity.

19. According to the accounting firm employed by the appraisal entity, Kent is owed $28,607.35 in appraisal fees for the period [of] 16 May 2011 through 31 December 2013.

20. Kent received no accounting from the appraisal entity after 31 December 2013 regarding appraisal fees due Kent.

21. From 1 January 2014 through 26 June 2015 (includes $725.00 after 25 June 2015), Kent is owed $12,016.20 in appraisal fees which amount is seventy per cent of accrued appraisal fees for the same period.

22. The $12,016,20 figure above is based upon Kent's record, ledger[,] and/or accounting, and the same was not challenged by Mark.

23. In response to cross examination, Kent acknowledges all appraisal fees generated by Kent were contractually to go to[,] and become the property of[,] the appraisal entity LLC[;] however, Kent never entered into any oral or written agreement with the appraisal entity LLC.

24. In response to direct examination by opposing counsel, Mark acknowledged that Mark's verbal appraisal fee agreement with Kent remained the same throughout Mark's business relationship with Kent[,] regardless of the legal status of the appraisal entity.

25. Kent['s] and Mark's motivation to make the appraisal entity a LLC in 2004 was to protect Kent and Mark from clients of the appraisal entity and not from each other.

26. At no time did Kent or Mark incorporate their existing verbal appraisal fee agreement into the LLC after its establishment.

27. Since [the appraisal entity's] inception in the year 2000, Mark did not take any action to change or terminate the verbal appraisal fee agreement (other than nonpayment) between Kent and Mark.

28. The applicable statute of limitations pursuant to I.C. 34-11-2-7 is six years.

29. The court having disregarded the LLC as the same relates to the relationship between Kent and Mark, the court has not entertained argument related to: piercing the corporate veil, fiduciary duty, personal liability of a LLC member or manager, and the applicable statute of limitations related thereto.

30. Mark shall take nothing on his counterclaim.

Judgment is therefore entered in favor of Kent Blacklidge against his son[,] Mark Blacklidge[,] in the amount of forty thousand six hundred twenty three dollars and fifty five cents ($40,623.55).

Appealed Order at 1-2. This appeal ensued.

# Discussion and Decision

## Standard of Review

[11] The trial court entered findings pursuant to Indiana Trial Rule 52, and our standard of review in that situation is well settled:

First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb

the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.

*Estate of Kappel v. Kappel*, 979 N.E.2d 642, 651-52 (Ind. Ct. App. 2012) (quotation marks and citations omitted). Moreover, "[w]e may affirm a judgment on any legal theory, whether or not relied upon by the trial court, so long as the trial court's findings are not clearly erroneous and support the theory adopted." *Id*. at 652 (citing *Mitchell v. Mitchell*, 695 N.E.2d 920, 923-24 (Ind. 1998)).

## Statute of Frauds

[12] As an initial matter, we note that Mark has waived the Statute of Frauds contention that he raises on appeal. Specifically, Mark maintains that the parties' oral appraisal fees agreement is unenforceable because it could not be performed within one year of its formation.[3] Under Indiana Trial Rule 8(C),

---

[3] Under the Statute of Frauds, oral contracts are enforceable only if they could be performed within one year from the making of the contract. Ind. Code § 32-21-1-1(b)(5). We have held that this statute only bars enforcement of an oral contract if it is *impossible* for the contract to be performed within one year. *Tobin v. Ruman*, 819 N.E.2d 78, 85 (Ind. Ct. App. 2004) (holding oral contract that lasted twelve years was

Statute of Frauds is an affirmative defense which must be both pleaded and proven by the party relying thereon. Although Mark pleaded Statute of Frauds in his answer, he failed to ever mention—much less argue—it again before the trial court in either his summary judgment motion, Appellee's App. at 16-25, or the bench trial on the merits. Therefore, he has waived that affirmative defense on appeal. *See Madison Area Educational Special Serv. Unit v. Daniels by Daniels*, 678 N.E.2d 427, 430 (Ind. Ct. App. 1997) (holding affirmative defense of statute of limitations was waived on appeal where it was raised in pleadings but not argued on motion for summary judgment that would have disposed of the case), *trans. denied*; *see also Phelps v. State*, 969 N.E.2d 1009, 1018 (Ind. Ct. App. 2012) (quoting *Wells v. State*, 441 N.E.2d 458, 463 (Ind. 1982)) ("Error can only be predicated on questions presented to and ruled upon by the trial court."), *trans. denied*.

## Effect of Formation of Limited Liability Company

[13] Mark contends that the trial court erred when it "disregarded" the LLC the parties formed and instead found that the LLC had no effect on the parties' oral contract regarding the distribution of appraisal fees. Appealed Order at 2. We agree that the trial court erred as a matter of law when it disregarded the LLC, but we uphold the judgment against Mark, personally, on other grounds.

---

enforceable where it was possible that it could have been performed within one year), *trans. denied*. There is no evidence in the record that the parties' appraisal fee agreement could not possibly have been performed within one year or that it was necessarily intended to last longer than one year; therefore, even if Mark had not waived his Statute of Frauds defense, it would not apply to Kent's contract claim.

***Kent is Owed $28,607.35 in Past-Due Appraisal Fees from May 16, 2011 through December 31, 2013.***

[14] Kent and Mark entered into a binding oral appraisal fee contract[4] in the year 2000, under which neither person was the employee of the other, and each person was entitled to seventy percent of the fees from the appraisals that person conducted. Thus, they had essentially formed an informal partnership.

[15] On December 13, 2004, Mark and Kent formed a LLC by filing Articles of Organization with the Indiana Secretary of State. The creation and operation of LLCs are controlled by the Indiana Business Flexibility Act, Article 18 of Title 23 of the Indiana Code.[5] *See Troutwine Estates Dev. Co., LLC v. Comsub Design and Engineering, Inc.*, 854 N.E.2d 890, 898 (Ind. Ct. App. 2006), *trans. denied*. To form a LLC, Indiana law requires nothing more than the filing of the Articles of Organization. Ind. Code §§ 23-18-2-4, 23-18-2-7. A LLC may also create other documents to control its business—such as an operating agreement, which binds LLC members regarding the affairs and conduct of the business. I.C. § 23-18-1-16. However, only the Articles of Organization are *required* to form a LLC. Thus, while Mark and Kent failed to create any other written documents regarding the LLC, that failure did not affect the legal existence of the LLC.

---

[4] An oral agreement can be a binding contract. *See, e.g.*, *Epperly v. Johnson*, 734 N.E.2d 1066, 1071 (Ind. Ct. App. 2000) (citing *Wolvos v. Meyer*, 668 N.E.2d 671, 674 (Ind. 1996)).

[5] We note that neither party has cited this controlling statutory authority in their briefs.

[16]     However, operating agreements may be oral. *Id*. Mark admitted that the parties' agreement to distribute appraisal fees such that each person was entitled to seventy percent of the fees that person brought into the business (hereinafter "the 70/30 formula") controlled their business relationship from its beginning to its end. Thus, during the period of time that the parties were both members of the LLC, they had an oral operating agreement under which income was distributed pursuant to the 70/30 formula.[6]

[17]     Effective January 1, 2014, Kent dissociated from the LLC by assigning his equity interest in the LLC to Mark, with Mark's consent. *See* I.C. § 23-18-6-5(a)(3)(B) ("A person ceases to be a member of a [LLC when] … the person is removed as a member … by the affirmative … consent of a majority in interest of the members after the member has assigned the member's entire interest in the [LLC].") At the time of his dissociation from the LLC, Kent was entitled to receive any past-due appraisal fees that were owed to him. I.C. § 23-18-5-5.1(b)(1) ("Upon the occurrence of an event of dissociation …, a dissociating member is entitled to receive any distribution that the member is entitled to under this article or the operating agreement."). At trial, Nicholson testified that Kent is owed $28,607.35 in appraisal fees for the period from May 16, 2011, through December 31, 2013. That testimony is supported by Nicholson's accounting records showing that the appraisal entity's clients paid for the

---

[6] To the extent the trial court made conclusions of law to the contrary—*see, e.g.*, findings 12 and 26, above—we disagree upon de novo review. *Kappel*, 979 N.E.2d at 652.

appraisals Kent performed during that period, but that Kent was not paid 70% of the income from those same appraisals as required by the parties' oral operating agreement. Tr. at 70; Appellee's App. at 11-13. Thus, the evidence supports the trial court's findings that Kent is owed $28,607.35 in appraisal fees for the period from May 16, 2011, through December 31, 2013.

### *Mark is Personally Liable to Kent for the $28,607.35 in Past-Due Appraisal Fees.*

[18] However, Mark maintains that, if Kent is owed the $28,607.35 in past-due appraisal fees, it is the LLC that owes Kent, rather than Mark, personally. We disagree.

[19] Indiana Code Section 23-18-4-2(a) describes the circumstances under which a LLC member may be personally liable to another LLC member:

> Unless otherwise provided in a written operating agreement, a member or manager is not liable for damages to the limited liability company or to the members of the limited liability company for any action taken or failure to act on behalf of the limited liability company, *unless the act or omission constitutes willful misconduct or recklessness*.

(emphasis added). A willful and wanton omission under this statute is "a failure to act when the actor has actual knowledge of the natural and probable consequence of injury and his opportunity to avoid the risk." *Purcell v. Southern Hills Inv., LLC*, 847 N.E.2d 991, 999 (Ind. Ct. App. 2006) (citing *Miner v. Southwest Sch. Corp.*, 755 N.E.2d 1110, 1113 (Ind. Ct. App. 2001)).

> "Whether the party has acted or failed to act, willful and wanton misconduct has two elements: 1) the defendant must have knowledge of an impending danger or consciousness of a course of misconduct calculated to result in probable injury; and 2) the actor's conduct must have exhibited an indifference to the consequences of his own conduct."

*Id.* (quoting *Miner*, 755 N.E.2d at 1113).

[20] By Mark's own admission, he knew that Kent was entitled to seventy percent of the fees from appraisals Kent performed while he was a co-member of the LLC. The evidence shows that Kent did not receive seventy percent of those fees, even after they had been collected, and that Mark knew of that fact at least as of the date Nicholson provided him with the Unpaid Bills Detail report on or around February 9, 2014. Yet, as sole remaining member of the LLC and the sole person in control of the LLC's finances at that point, Mark chose not to pay Kent the money he knew Kent was owed. Thus, Mark had knowledge of the LLC's non-payment to Kent of money owed to Kent pursuant to the oral operating agreement and of the probable injury that non-payment would cause to Kent. And Mark knew that, as of January 1, 2014, he was the only person in a position to make that payment. Nevertheless, Mark chose not to pay Kent the money he was owed, instead exhibiting indifference to the consequences of the non-payment. Thus, the trial court's findings of fact support the conclusion that Mark's refusal to pay Kent money Mark knew the LLC owed Kent was willful misconduct—or at the very least, reckless—and that Mark may be held personally liable to Kent for the amount owed. I.C. § 23-18-4-2(a).

***Mark is Personally Liable to Kent for the $12,016.20 in Past-Due Appraisal Fees from January 1, 2014 through June 26, 2015.***

[21]     Mark admits that Kent is owed $12,016.20 in past-due appraisal fees for the period of time from January 1, 2014—when Kent ceased to be a LLC member—to June 26, 2014, when Kent discontinued his business relationship with the appraisal entity. Tr. at 85-86 (testifying that Kent's records of the appraisal fees he is owed from this period of time are "100% or close to 100% accurate"). However, Mark contends that the appraisal entity is liable to Kent for that amount, rather than Mark, personally. Again, we disagree.

[22]     Mark admits that Kent did not have a written contract with the LLC or the appraisal entity, and he admitted in his summary judgment motion that Kent was not an employee of the LLC. Nor is there any evidence of an oral agreement between Kent and the LLC after Kent dissociated from it. Yet Mark admits that the parties continued to operate under the 70/30 formula until Kent ended the business relationship. Given this evidence, we conclude that, when Kent left the LLC, the parties once again began operating under their initial oral appraisal fee contract. That contract was between Kent and Mark, not Kent and the LLC or Kent and the appraisal entity. Therefore, the evidence supports the trial court's findings and judgment that Mark is personally liable to Kent for the appraisal fees Kent is owed for the period of time after Kent dissociated from the LLC but continued his business relationship with Mark, i.e., January 1, 2014 through June 26, 2015.

*Conclusion*

[23] Although we hold that the trial court erred as a matter of law when it "disregarded" the parties' formation of a LLC, we uphold its judgment because its findings of *fact* are not clearly erroneous and they support the theory that Mark is personally liable to Kent for past-due appraisal fees from the time when Kent was a co-member of the LLC and also from the time when Kent was in a business relationship with Mark that was governed by an oral appraisal fee contract. *See, e.g.*, *Kappel*, 979 N.E.2d at 652.

# Applicable Statute of Limitations

[24] As noted above, at all times the parties' business relationship was governed by oral agreements.[7] Yet, Mark asserts that the trial court erred when it applied the six-year statute of limitations applicable to "contracts not in writing," I.C. § 34-11-2-7, rather than the two-year statute of limitations applicable to "employment related actions," I.C. § 34-11-2-1. A dispute relates to employment such that the two-year statute of limitations applies if it "relates to a term, condition, or privilege of employment." *Mack, Inc. v. Colvin*, 495 N.E.2d 813, 814 (Ind. Ct. App. 1986), *trans. denied*. "The burden of establishing the nature of plaintiff's action so that the relevant limitation period may be identified is on the party who relies upon the statute of limitations defense." *Id.*

---

[7] Prior to the formation of the LLC, the oral appraisal fee contract between Kent and Mark governed. After formation of the LLC, the oral operating agreement governed. And after Kent dissociated from the LLC, the oral appraisal fee contract between him and Mark once again governed.

at 815; *see also, e.g.*, *Gabriel v. Gabriel*, 947 N.E.2d 1001, 1008 (Ind. Ct. App. 2011).

[25] The trial court found that "[a]t no time did Kent become an employee of Mark or the LLC," and that finding is supported by the evidence. Appealed Order at 1. Mark admitted in his summary judgment motion that Kent was not his employee or the LLC's employee. Appellee's App. at 18. At trial, Mark admitted that there was no written contract between Kent and the LLC or between Kent and Mark. Tr. at 88. Rather, Mark admitted that his business relationship with Kent pursuant to the oral appraisal fee agreement—under which the parties were equals, with neither being the employee of the other— remained the same throughout the parties' business relationship. *Id*. at 87-88. Thus, Mark failed to carry his burden of proving that Kent's action is one for an employment dispute rather than solely an oral contract dispute. The trial court did not err in applying the six-year statute of limitations to the parties' oral agreements.

# Conclusion

[26] The trial court's findings of fact support its judgment that Mark is personally liable to Kent under the parties' oral appraisal fee agreements—although under a different legal theory. And the trial court did not err in applying the six-year statute of limitations to the parties' oral agreements.

Affirmed.

Kirsch, J., and Pyle, J., concur.