ATTORNEYS FOR APPELLANT

Liberty L. Roberts
Church Church Hittle + Antrim
Noblesville, Indiana

Kaitlyn E. Collyer
Church Church Hittle + Antrim
Fishers, Indiana

ATTORNEY FOR APPELLEE

Stacy J. Vasilak
Merrillville, Indiana



FILED

Oct 16 2020, 8:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# COURT OF APPEALS OF INDIANA

Miami County Board of
Commissioners,

*Appellant-Defendant,*

v.

US Specialty Insurance
Company as Subrogee of the
City of Peru, Indiana,

*Appellees-Plaintiffs*

October 16, 2020

Court of Appeals Case No.
20A-CT-953

Appeal from the Miami Circuit
Court

The Honorable William C.
Menges, Jr., Special Judge

Trial Court Cause No.
52C01-1801-CT-23

**Weissmann, Judge.**

[1] Employees of the Miami County Board of Commissioners (the County) deployed a homemade, 800-pound device to break up a logjam on the Wabash River in Peru (the City). The County employees were aware that there were City water lines under the river in that area but did not request a map or precise information about the location of the water lines. When a County employee set the device on the riverbed, one of the water lines broke and caused damage totaling over $100,000.

[2] The City and its insurer, US Specialty Insurance Company (the Insurer), filed a common law negligence claim against the County. Following a bench trial, the trial court entered judgment in favor of the City. The County appeals, arguing that the Indiana Damage to Underground Facilities Act (DUFA)[1] abrogated common law negligence in this area and that the City is not entitled to relief under DUFA. Finding that DUFA did not abrogate common law for situations that do not fall under DUFA's purview and that the trial court did not err by finding that the City proved its negligence claim, we affirm.

## Facts

[3] In January 2016, a logjam on the Wabash River in the City was putting pressure on one of the piers supporting the Wayne Street Bridge. County employees developed a plan to move the logs off the pile and allow the logs to float down the river. They made a device that repurposed a rotor from a

---

[1] Ind. Code ch. 8-1-26.

combine, welding pieces of metal to the bottom of the rotor to act as fingers to hook onto the logs. The rotor was about 12 feet long and weighed 800 to 1000 pounds. The rotor was hooked to a cable, which was attached to the arm of an excavator. The excavator was parked on the bridge, the arm of the excavator was extended over the side of the bridge, and the rotor was lowered to the logjam, where it was placed on the log pile to move logs off the pile and into the water.

[4] About two years earlier, County employees had intended to dismantle the logjam by using a backhoe in the river. A City Utilities employee showed a map to County employee Randy Heilman. The map indicated that there were two water lines on the east side of the bridge, and the City employee told Heilman that the backhoe ran the risk of hitting the water lines. Therefore, the County employees stopped their work.

[5] On January 26, 2016, County Highway Department employees went to the bridge with the excavator they planned to use to remove the logjam to determine if the arm of the equipment would be close enough to overhead powerlines that it would need to be wrapped with safety material. While they were on the bridge, City of Peru Utilities employees approached them and learned about the plan to remove the logjam. The City employees advised the County employees, including Heilman, that there were two water lines near the bridge—one was about thirty-six feet away from the bridge and the other was between the first water line and the bridge. The second water line is buried under the riverbed; the first is above the riverbed and is exposed and visible

when the river level is low enough. The County employees did not ask for a map, ask that the waterlines be marked, request a locate of the precise location of the waterlines, or tell the City when the work would be performed.

[6] Two days later, on January 28, 2016, the County set up the excavator on the bridge, lowered the rotor to the logjam, and began moving logs off the pile. After moving approximately ten to fifteen logs, the employees took a break. The excavator operator could not see over the side of the bridge and wanted to exit the excavator to look at the pile; therefore, he lowered the rotor and set it on the riverbed. Tension was kept on the cable, so the full weight of the rotor was not placed on the riverbed. Nonetheless, when the rotor was set down, water began bubbling up from the river, indicating that one of the waterlines had broken. The County employees did not contact the City to report the damage.

[7] City employees immediately noticed a problem when the pressure in the water lines dropped suddenly from sixty-five pounds to forty-five pounds. Initially, they believed that they had lost a pump, but a City employee saw a County vehicle driving away and discerned what had happened.

[8] The City went to shut down the broken water line, but it was too late. The City had to enact a citywide boil order, requiring City employees from multiple departments to go door to door to inform all residents. The employees worked around the clock for a couple of days while the repairs to the damaged water

line were underway. The City's Insurer paid $103,370.94 for the repairs and the City paid a $1,000 deductible.

[9] On January 23, 2018, the City and the Insurer filed a complaint against the County, alleging that they had sustained damages as a proximate result of the County's negligent and careless misconduct. A bench trial was held on November 26, 2019. On March 27, 2020, the trial court entered judgment in favor of the City and the Insurer, finding, in pertinent part, as follows:

> 5. Randy Heilman was familiar with the requirements of [DUFA], and had previously made formal location request[s] under the Act for other excavation projects on behalf of the Highway Department.

> 6. Neither Randy Heilman, or any other person, on behalf of Miami County made a formal locate call pursuant to the terms of DUFA prior to attempting to remove the log jam from the Wayne Street bridge pier.

> ***

> *Conclusions of Law*

> ***

> 2. The County had a duty to exercise reasonable care under the circumstances to prevent harm to those water lines.

> 3. The County breached its duty of reasonable care by failing to either request a locate, obtain a map, or otherwise take

reasonable precautions to determine the precise location of the lines to prevent harm to the City's water lines.

\*\*\*

5.     DUFA applies to protect underground facilities from damage due to excavation [or] d[e]molition.

\*\*\*

10.     If DUFA is applicable the County was required to request a formal locate and otherwise comply with DUFA, which the County failed to do.

\*\*\*

12.     Under either the common law, or DUFA, the Plaintiffs are entitled to judgement against the Defendant.

Appealed Order p. 2-3. The trial court ordered the County to pay total damages of $104,370.94. The County now appeals.

# Discussion and Decision

[10]    The County raises the following arguments on appeal: (1) DUFA abrogated common law negligence; (2) under DUFA, the County was not required to request a locate because it was not engaging in excavation or demolition; and (3) if common law negligence applies, the trial court erroneously found that the County acted negligently.

# I.  DUFA

## A.  How Much Common Law Did DUFA Abrogate?

What we must first determine is to what extent DUFA has abrogated common law negligence.  The County argues that DUFA has abrogated *all* common law negligence claims related to work near underground utilities; the City disagrees; the trial court did not squarely answer the question.

The County directs our attention to *City of Fort Wayne v. Northern Indiana Public Service Company* in support of its argument that DUFA has abrogated a broad swath of common law negligence.  2 N.E.3d 60 (Ind. Ct. App. 2014).  We find that *Fort Wayne* compels the opposite result.  In that case, Northern Indiana Public Service Company (NIPSCO) was performing work that included excavation and construction of an underground monolith.  NIPSCO requested a locate of underground facilities operated by the City in the area; the City provided the information, but it was inaccurate; damage and flooding resulted.  The City filed a lawsuit against NIPSCO.  On appeal, this Court found that DUFA applied and that the City had failed to comply with its requirements.  *Id. at 63-64*.

The City argued that notwithstanding DUFA, it still had a common law negligence claim against NIPSCO.  This Court disagreed, observing as follows:

> DUFA governs the relationship between and responsibilities of operators of underground facilities and those who wish to excavate or build in the vicinity of those facilities.  Most significantly for this case, DUFA provides a cause of action for

> operators who suffer a pecuniary loss due to a violation of DUFA, allowing the operator to recover actual damages, costs, attorney's fees, and possible punitive damages. The General Assembly also saw fit to provide a defense to that action in case the operator failed to discharge its duties imposed by DUFA. We doubt very seriously that the General Assembly intended that an operator who lost his cause of action pursuant to DUFA would still be able to recover under another theory.

*Id.* at 64 (internal citation omitted). In other words, where DUFA applies and offers a potential remedy for damages stemming from excavation or demolition in the vicinity of underground facilities, the damaged party's only possible recourse is DUFA.

[14] When considering whether a statute has abrogated the common law, "[w]e presume that the legislature does not intend by the enactment of a statute to make any changes in the common law beyond what it declares, either in express terms or by unmistakable implication." *Rocca v. S. Hills Counseling Ctr., Inc.*, 671 N.E.2d 913, 920 (Ind. Ct. App. 1996). Here, the General Assembly did not, either in express terms or by unmistakable implication, extend the application of DUFA beyond the precise situations described therein.

[15] The County argues that DUFA "governs the rights and responsibilities for work near, and damage to, underground utilities," such that *all* common law related to work near underground utilities has been abrogated by DUFA. Appellant's Br. p. 11. The County paints with too broad a brush. As noted by the *Fort Wayne* Court, DUFA governs the relationship between "operators of underground facilities and those who wish to *excavate or build* in the vicinity of

those facilities." *Fort Wayne*, 2 N.E.3d at 64 (emphasis added). Therefore, DUFA does *not* apply to situations, such as the one at issue in this appeal, that do *not* involve excavation or demolition (or, per *Fort Wayne*, building) in the vicinity of underground facilities. Concomitantly, DUFA has not abrogated the common law for situations that do not fall under its purview.

[16] What we must determine, therefore, is whether DUFA applies to this case. If it does, no common law negligence claim is available to the City. If it does not, we must consider whether the City made its case for common law negligence.

## B. Does DUFA Apply?

[17] The relevant provision of DUFA provides that "a person may not excavate real property or demolish a structure that is served or was previously served by an underground facility without first ascertaining . . . the location of all underground facilities in the area affected by the proposed excavation or demolition." Ind. Code § 8-1-26-14. It is undisputed that the County did not ascertain the location of the water lines before beginning the log removal operation.

[18] As noted above, DUFA's locate requirement applies to (1) the excavation of real property and (2) the demolition of a structure served by an underground facility.

[19] Turning first to excavation, we note that "excavate" is defined as "an operation for the movement, placement, or removal of earth, rock, or other materials *in or on the ground* by use of tools or mechanized equipment or by discharge of

explosives . . . ." I.C. § 8-1-26-6 (emphasis added). Here, clearly, the operation at issue was for the movement or removal of logs ("other materials") by use of mechanized equipment. But the logs were not "in or on the ground," as required by the statute. Instead, they were piled up to six feet above and on the surface of the Wabash River. As such, the work at issue here did not fall within the relevant definition of "excavate."

[20] Next, with respect to demolition, the term "demolish" is defined as "an operation in which a structure or mass of material is wrecked, raised, rendered, moved, or removed by means of tools, equipment, or discharge of explosives." I.C. § 8-1-26-5. That definition is slightly narrowed by the locate requirement provision, which states that it applies to a person who seeks to "demolish *a structure*" that is or was served by an underground facility. I.C. § 8-1-26-14 (emphasis added). Here, while the work at issue would arguably have fallen within the more expansive definition of "demolish," we can only find that the demolition at issue did not occur to "a structure." *See Black's Law Dictionary* (11th ed. 2019) (defining "structure" as "[a]ny construction, production, or piece of work artificially built up or composed of parts purposefully joined together"). Instead, the work was performed on a large, naturally occurring pile of logs floating in a river. As the work at issue was neither a project to excavate nor to demolish a structure, DUFA and its requirements do not apply.

[21] Because DUFA does not apply, the City was not foreclosed from bringing a general negligence claim. Therefore, we turn next to the substance of that claim.

# II. Negligence

[22] The County argues that even if a negligence claim is permitted in this case, the trial court erred by finding that the County acted negligently. The trial court entered findings following a bench trial, and our standard of review in that situation is well settled:

> "First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions."

*Blacklidge v. Blacklidge*, 96 N.E.3d 108, 113 (Ind. Ct. App. 2018) (quoting *Estate of Kappel v. Kappel*, 979 N.E.2d 642, 651-52 (Ind. Ct. App. 2012)). We "may affirm a judgment on any legal theory, whether or not relied upon by the trial court, so long as the trial court's findings are not clearly erroneous and support the theory adopted." *Kappel*, 979 N.E.2d at 652.

[23] To recover under a theory of common law negligence, the plaintiff must prove that there was a duty that was owed by the defendant to the plaintiff; that the

defendant breached the duty; and that the breach of the duty proximately caused the plaintiff's damages. *E.g.*, *Caesars Riverboat Casino, LLC v. Kephart*, 934 N.E.2d 1120, 1123 (Ind. 2010).

[24] First, as to whether a duty existed, we must examine the relationship between the parties, the reasonable foreseeability of harm to the injured party, and public policy concerns. *Id.*; *see also Cooper's Hawk Indianapolis, LLC v. Ray*, 150 N.E.3d 698, 701 (Ind. Ct. App. 2020) (holding that whether a duty exists is a question of law). The relationship between the parties was that of overlapping municipalities. The County was aware, and had been for at least two years, that there were two City water lines under the river near the bridge—and the logjam. In 2014, City employees asked County employees to stop operating a backhoe in the river for fear of damage to the water lines. Therefore, not only was it reasonably foreseeable that major projects in this area could cause damage to the water lines, the County was *actually aware* of the potential harm. As for public policy concerns, it is good public policy to ensure that an entity doing work near a public utility acts with reasonable care. Having considered these three factors, we find as a matter of law that the County owed a duty to the City to act with reasonable care in its removal of the logjam.

[25] Next, as to whether the County breached that duty, we note that whether there has been a breach is generally a question of fact to be determined by a factfinder. *Bell v. Grandville Cooperative, Inc.*, 950 N.E.2d 747, 753 (Ind. Ct. App. 2011). As noted above, in considering the trial court's conclusion that the County breached its duty, we will neither reweigh the evidence nor assess

witness credibility and must consider only the evidence favorable to the judgment. *Blacklidge*, 96 N.E.3d at 113.

[26] Here, the County was aware of the water lines and their close proximity to the logjam jobsite. County employees were told both two years before the water line was damaged and two days before the damage occurred that the water lines were in that vicinity. In 2014, County employees saw a map including the water lines. In 2016, County employees did not see or request a map. They did not ask that the water lines be marked or request a locate of the water lines.[2] They did not even notify the City beforehand of the planned date of the project. Then, in the middle of the project, knowing that there were water lines in the vicinity, a County employee intentionally set down a homemade device weighing 800 to 1000 pounds on the riverbed. Even with tension maintained on the cable such that the full weight of the device was not placed on the riverbed, the water line broke immediately and water began bubbling up into the river. And although it was immediately apparent that something was wrong, the County employees merely drove away from the project site without informing anyone from the City that things had gone amiss. We have little difficulty finding that based on this evidence, the trial court did not err by concluding that the County breached its duty of reasonable care to the City.

---

[2] The County focuses only on the City's argument that the County should have requested a locate of the water lines, arguing that there is no common law duty to do so. Even if we accept for argument's sake that the County is correct, there is a wealth of other evidence in the record supporting a conclusion that the County's actions (or lack thereof) amounted to a breach of its duty of reasonable care.

[27]     Finally, it is undisputed that the City and the Insurer sustained damages as a result of the incident. Specifically, the City paid $1,000 to the Insurer as its deductible and the Insurer paid the City's claim in the amount of $103,370.94.

[28]     In sum, we find that the trial court did not err by concluding that the City proved all elements of its common law negligence claim. Likewise, it did not err by ordering that the County pay damages totaling $104,370.94.

[29]     The judgment of the trial court is affirmed.

Bailey, J., and Vaidik, J., concur.